# LAMAR v. SPLAIN.

CRIMINAL LAW; JURISDICTION; REMOVAL OF ACCUSED; OFFICERS; IMPERSONATING PUBLIC OFFICER; STATUTE; CONSTRUCTION.

1. As to whether a United States Commissioner who has admitted a prisoner to bail for appearance in a Federal district court in which the indictment was returned may entertain proceedings for the prisoner's surrender by his surety, or whether such proceedings should be before the district court which has jurisdiction of the offense,—*quære.*

2. A prisoner who was indicted in a Federal district court, and, having been found in the District of Columbia, was held by a United States Commissioner to bail for appearance in the district court, cannot by habeas corpus successfully assail proceedings for his surrender by his surety, upon the ground that they had before the Commissioner, rather than before the district court, where his surrender was sought in his own interest.

3. A prima facie case for the removal of a prisoner whose identity is admitted, by a United States Commissioner in whose jurisdiction he is found, to the Federal district court in which he was indicted,

D. C.]                    Statement of the Case.

exists where copies of the indictment and writ have been certified to the Commissioner by the district court.

4. To warrant the removal of a prisoner by a United States Commissioner to the Federal district court in which he was indicted, for an, offense against the United States, the indictment is not required to charge an offense according to the standards required in a criminal pleading, and will not be judged by such standards; but it will be regarded as sufficient if it satisfactorily, though inartificially, charges the fugitive with the crime.

5. One good count in an indictment under which a trial can be had in the Federal district court in which a prisoner was indicted is sufficient to warrant his removal thereto by a United States Commissioner in whose jurisdiction he is found.

6. Office, in the common use and meaning of the word, is a public charge or position that may be held in the Federal, a State, or a municipal government, and is executive, judicial, or legislative in character.

7. As to whether a member of the House of Representatives of Congress is an officer of the government of the United States within the meaning of sec. 32, chap. 4, U. S. Crim. Code, making it an offense falsely to pretend to be such an officer,—*quære.*

8. Sec. 32, chap. 4, U. S. Crim. Code, making it an offense falsely to pretend to be an officer of the United States °government, is not so clearly inapplicable to the impersonation of a member of the House of Representatives of Congress as to warrant this court in discharging a petitioner in habeas corpus who has been indicted under such provision in a Federal district court, and is being held by a United States Commissioner in the District of Columbia, the interpretation of the statute being peculiarly the province of the district court.

No. 2628.   Submitted April 13, 1914.   Decided May 4, 1914.

HEARING on an appeal by the petitioner from an order of the Supreme Court of the District of Columbia discharging his petition for the writ of habeas corpus.              *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from an order of the supreme court of the District discharging a writ of habeas corpus.

An indictment returned to the district court of the United

States for the southern district of New York, in four counts, charged appellant, David Lamar, with falsely assuming to be an officer of the United States with the intent to defraud certain persons in the State of New York.

The first count charges that the defendant did falsely assume and pretend to be an officer acting under the authority of the United States, to wit, a member of the House of Representatives of the Congress of the United States, that is to say, A. Mitchell Palmer, a member of Congress representing the twenty-sixth congressional district of the State of Pennsylvania, with the intent, then and there, to defraud (certain named persons).

Other counts charged the same offense in varying forms. A capias issued thereon to the marshal of the southern district of New York was returned that the defendant could not be found.

The defendant was afterwards arrested in the District of Columbia and brought before Anson S. Taylor, United States Commissioner, to whom certified copies of the indictment and the process thereon were submitted.

On September 24, 1913, the Commissioner held the defendant to bail in the sum of $3,000 for his appearance before the said United States district court of the southern district of New York on the first day of the term thereof to be held October 7, 1913. A recognizance in the ordinary form, with a surety, was entered into, and the defendant was discharged from custody upon the same.

October 4, 1913, the surety offered to surrender the defendant to said Commissioner, who accepted the same, and committed the defendant to the custody of the marshal of the district.

Defendant then sued out a writ of habeas corpus from the chief justice of the supreme court of the District; his petition alleging that the indictment charged him with no offense, and that there was no evidence tending to show that he was probably guilty of the offense, if any, with which he is supposed to be charged. Return was made to the writ by Aulick Palmer, then marshal, setting out the commitment and a copy of the proceedings before the Commissioner. Upon the petition and ex-

hibits, and the return of the marshal, defendant moved his discharge from custody, notwithstanding said proceedings.

October 22, 1913, the court denied the motion and the petition, discharged the writ, and remanded the defendant to the custody of the marshal.

Defendant has appealed from the order, assigning nineteen grounds of error. Marshal Palmer having retired from office since the lodgment of the appeal, his successor, Maurice Splain, has been substituted as a party in his stead.

*Mr. Henry E. Davis* for the appellant.

*Mr. Clarence R. Wilson,* United States Attorney for the District of Columbia, *Mr. J. Snowden Marshall, Mr. Harold Harper,* and *Mr. S. McComas Hawken* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The argument has taken a wider range than it is important to follow.

It would seem that when the recognizance was entered into before the Commissioner the duty of the latter ended; and that subsequent proceedings for the surrender of the prisoner by his surety should have been before the court having jurisdiction of the offense.

Whether so or not, the question is immaterial. The action having been taken in the interest of the petitioner, he is in no condition to question its irregularity.

In the original proceeding before the Commissioner, the copy of the indictment and writ, and the admission of the identity of the prisoner, constituted a prima facie case for removal. *Haas* v. *Henkel,* 216 U. S. 462, 481, 54 L. ed. 569, 578, 30 Sup. Ct. Rep. 249, 17 Ann. Cas. 1112; *Price* v. *Henkel,* 216 U. S. 488, 492, 54 L. ed. 581, 586, 30 Sup. Ct. Rep. 257.

No evidence of any nature was offered by the prisoner.

The single question for determination is this: Does the in-

dictment charge an offense against the laws of the United States?

In this consideration: "The only safe rule is to abandon entirely the standard to which the indictment must conform, judge as a criminal pleading, and consider only whether it shows satisfactorily that the fugitive has been in fact, however inartificially, charged with crime in the State from which he has fled." *Pierce* v. *Creecy,* 210 U. S. 387, 402, 52 L. ed. 1113, 1120, 28 Sup. Ct. Rep. 714; and cases there cited. *Strassheim* v. *Daily,* 221 U. S. 280, 282, 55 L. ed. 735, 737, 31 Sup. Ct. Rep. 558. The foregoing were extradition cases on demand of a State; but the rule applies in proceedings for removal to a United States court in another jurisdiction. *Haas* v. *Henkel, supra.*

One good count in an indictment under which a trial may be had in the district to which removal is sought is enough to support an order for removal. *Price* v. *Henkel,* 216 U. S. 488, 490; 54 L. ed. 581, 585, 30 Sup. Ct. Rep. 257. For this reason objections to other counts than the first will not be considered. If the first count, before recited, substantially charges an offense against the United States, the others will be for the exclusive determination of the court in which the indictment was returned.

The charge in the indictment is that defined in sec. 32, chap. 4, of the Criminal Code of the United States, [35 Stat. at L. 1095, chap. 321, U. S. Comp. Stat. Supp. 1911, p. 1598], reading as follows:

"Whoever, with intent to defraud either the United States or any person, shall falsely assume or pretend to be an officer or employee acting under the authority of the United States, or any Department or any officer of the government thereof, and shall take upon himself to act as such, or shall in such pretended character demand or obtain from any person or from the United States, or any Department, or any officer of the government thereof, any money, paper, document, or other valuable thing, shall be fined not more than one thousand dollars or imprisoned not more than three years, or both."

In a case cited on behalf of the appellant it is declared that this section includes two separate offenses; the first, falsely impersonating an officer or employee of the United States and acting as such with intent to defraud; the second, falsely impersonating an officer or employee of the United States, and in the assumed character demanding or obtaining some valuable thing with intent to defraud. *United States* v. *Taylor,* 108 Fed. 621.

This indictment purports to charge the first of those offenses.

The contention is that there is no offense charged because a member of the House of Representatives is not an officer of the United States. If this contention be sound the indictment is bad in substance. We have found no case in which the point has been determined.

Office, in the common use and meaning of the word, is a public charge or position that may be held in the Federal, a State, or a municipal government, and is executive, judicial, or legislative in character.

A member of the House of Representatives in the Congress of the United States is elected by the voters of his State in a designated district, to hold a position of honor and trust created by the Constitution of the United States as a branch of the national legislative department. As such he is an officer of the United States in the general sense. We do not regard the case of *Burton* v. *United States,* 202 U. S. 344, 369, 50 L. ed. 1057, 1066, 26 Sup. Ct. Rep. 688, 6 Ann. Cas. 362, as opposed to this view.

Burton, a member of the Senate of the United States, had been convicted of a crime. The judgment convicting him proceeded to recite, in the terms of sec. 1782, Rev. Stat. U. S. Comp. Stat. 1901, p. 1212, that he "is rendered forever hereafter incapable of holding any office of honor, trust, or profit under the government of the United States." It was said that the words might well have been omitted from the judgment.

"By its own force, without the aid of such words in the judgment, the statute makes one convicted under it incapable forever thereafter of holding any office of honor, trust, or profit

under the government of the United States. But the final judgment of conviction did not operate, *ipso facto,* to vacate the seat of the convicted senator, nor compel the Senate to expel him, or to regard him as expelled by force alone of the judgment. The seat into which he was originally inducted as a senator from Kansas could only become vacant by his death, or by the expiration of his term of office, or by some direct action on the part of the Senate in the exercise of its constitutional powers."

This is necessarily so because the Constitution provides that each House shall be the judge of the elections, returns, and qualifications of its own members. Art. I. sec. 5. The court proceeded then to use the language relied on by the appellant: "This must be so for the further reason that the declaration in sec. 1782, that anyone convicted under its provisions shall be incapable of holding any office of honor, trust, or profit 'under the government of the United States;' refers only to offices created by or existing under the direct authority of the national government as organized under the Constitution, and not to offices the appointments to which are made by the States acting separately, albeit proceeding, in respect of such appointments, under the sanction of that instrument. While the Senate, as a branch of the legislative department, owes its existence to the Constitution, and participates in passing laws that concern the entire country, its members are chosen by State legislatures, and cannot properly be said to hold their places under the government of the United States."

What is here held is that officers "under the government of the United States" are those appointed in the manner provided in the Constitution. It falls far short of holding that a member of Congress, though not holding an office *under* the government of the United States, is not an officer *of* that government. His office is not created by the government organized under the Constitution, but is an integral part of that government.

Sec. 32 punishes one who falsely assumes or pretends to be an officer of the United States, and its object would seem to apply equally as well to a legislative officer of the United States

as to one holding an office under the government thereof. Be that as it may, it is not plain that it does not so apply, and for that reason its interpretation is peculiarly the province of the court in which the indictment was presented.

We find no error in the judgment and it is affirmed, with costs. *Affirmed.*

An appeal to the Supreme Court of the United States was allowed May 12, 1914.